Pierre stephan Sims
FULL NAME

Pierre Stephen Simms
COMMITTED NAME (if different)

High Desert Detention center
FULL ADDRESS INCLUDING NAME OF INSTITUTION

9438 Commerce Way

Adelanto, CA, 92301
PRISON NUMBER (if applicable)

# 2305341310

FILED
CLERK, U.S. DISTRICT COURT

JAN 31 2025

CENTRAL DISTRICT OF CALIFORNIA
BY                        DEPUTY

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

PIERRE STEPHEN SIMMS

                                    PLAINTIFF,

v.

JOHN DOE, High
Desert Detention Center facility sergeant
A. MEDAWAR, High Desert Detention
center facility sergeant          DEFENDANT(S).

CASE NUMBER  EDCV25-291-SPG (AJR)

                    To be supplied by the Clerk

**CIVIL RIGHTS COMPLAINT
PURSUANT TO** *(Check one)*

☐ 42 U.S.C. § 1983
☐ Bivens v. Six Unknown Agents 403 U.S. 388 (1971)

## A. PREVIOUS LAWSUITS

1. Have you brought any other lawsuits in a federal court while a prisoner: ☐ Yes  ☑ No

2. If your answer to "1." is yes, how many? _____

    Describe the lawsuit in the space below. (If there is more than one lawsuit, describe the additional lawsuits on an attached piece of paper using the same outline.)

a. Parties to this previous lawsuit:

Plaintiff _____

_____

Defendants _____

_____

b. Court _____

_____

c. Docket or case number _____

d. Name of judge to whom case was assigned _____

e. Disposition (For example: Was the case dismissed? If so, what was the basis for dismissal? Was it appealed? Is it still pending?) _____

f. Issues raised: _____

_____

_____

g. Approximate date of filing lawsuit: _____

h. Approximate date of disposition _____

## B. EXHAUSTION OF ADMINISTRATIVE REMEDIES

1. Is there a grievance procedure available at the institution where the events relating to your current complaint occurred? ☑ Yes   ☐ No

2. Have you filed a grievance concerning the facts relating to your current complaint? ☑ Yes   ☐ No

   If your answer is no, explain why not _____

   _____

   _____

3. Is the grievance procedure completed? ☑ Yes   ☐ No

   If your answer is no, explain why not _____

   _____

4. Please attach copies of papers related to the grievance procedure.

## C. JURISDICTION

This complaint alleges that the civil rights of plaintiff _Pierre      Simms_
(print plaintiff's name)

who presently resides at _9438 Commerce Way, Adelanto, C.A. 92301_
(mailing address or place of confinement)

were violated by the actions of the defendant(s) named below, which actions were directed against plaintiff at

_San Bernadino County High Desert Detention center_
(institution/city where violation occurred)

on (date or dates) 09-19-2024    09-20-2024    09-21-2024
                   (Claim I)         (Claim II)       (Claim III)

**NOTE:**   You need not name more than one defendant or allege more than one claim. If you are naming more than five (5) defendants, make a copy of this page to provide the information for additional defendants.

1. Defendant    John Doe                                          resides or works at
                (full name of first defendant)
                9438 Commerce Way, Adelanto, CA, 92301
                (full address of first defendant)
                Sergeant
                (defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☑ individual  ☑ official capacity.

Explain how this defendant was acting under color of law:

The defendant John Doe acted under color of law because the defendant acted while clothed under the authority of state law.

2. Defendant    A. Medawar                                        resides or works at
                (full name of first defendant)
                9438 Commerce Way, Adelanto, CA, 92301
                (full address of first defendant)
                Sergeant
                (defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☑ individual  ☑ official capacity.

Explain how this defendant was acting under color of law:

Defendant A. Medawar acted under color of law because the defendant acted while clothed under the authority of state law.

3. Defendant                                                      resides or works at
                (full name of first defendant)

                (full address of first defendant)

                (defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☐ individual  ☐ official capacity.

Explain how this defendant was acting under color of law:

_____

_____

_____

4.   Defendant _____ resides or works at
     _____
     (full name of first defendant)

     _____
     (full address of first defendant)

     _____
     (defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☐ individual    ☐ official capacity.

Explain how this defendant was acting under color of law:

_____

_____

5.   Defendant _____ resides or works at

     _____
     (full name of first defendant)

     _____
     (full address of first defendant)

     _____
     (defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☐ individual    ☐ official capacity.

Explain how this defendant was acting under color of law:

_____

_____

**D. CLAIMS**\*

**CLAIM I**

The following civil right has been violated:

INTRODUCTION

1. This complaint places before the Court a lawsuit involving 2 sergeants of High Desert Detention Center (A San Bernadino County Jail), The 3 claims stated in this complaint are all a chain of events stemming from a retalitory housing transfer against the plaintiff ordered by Defendant Doe, because the plaintiff filed a grievance complaint about the facilities excessively cold inhumane conditions being punishment.

2. This complaint alleges that both Defendants John Doe and A. Medawar's actions caused the plaintiff to be needlessly assaulted and injured because the plaintiff was transfered to a housing segment that posed

Supporting Facts: Include all facts you consider important. State the facts clearly, in your own words, and without citing legal authority or argument. Be certain you describe, in separately numbered paragraphs, exactly what each DEFENDANT (by name) did to violate your right.

a documented safety risk to the plaintiff that Defendant Medawar was fully aware of before the incident occurred which left the plaintiff with permanent injury.

CLAIM 1

3. On 08-16-2024 The plaintiff filed a grievance about the excessively frigid temperatures in the facility.

4. On 08-18-2024 the plaintiff received b'ren around response from defendant Doe who waved off the issue (as seen in the attached grievance copies).

\*If there is more than one claim, describe the additional claim(s) on another attached piece of paper using the same outline.

5. On 09-19-2024 the Plaintiff appealed the grievance and made note of how most officers on shift wear heavy bomber Jackets indoors to combat the cold and also mentioned how refusing to change the temperature or provide access to suitable clothing is a human rights violation by forcing unneccasory harsh conditions (as seen in grievance copy attached).

## CLAIM II

6. On 09-20-2024 around 6AM at breakfast time the Plaintiff was given directions to pack his things by the Officer on shift Deputy RoJo-Perez whom informed the Plaintiff that he was being moved to a different housing unit.

7. The Plaintiff asked Deputy RoJo-Perez where he was being moved to.

8. Deputy RoJo-Perez told the Plaintiff he was being moved to unit 1.

The Plaintiff then asked deputy Rojo-Perez why he as being moved for no reason at such an unusual me.

. Deputy Rojo-Perez then proceeded to lie to the aintiff and tell the plaintiff that he was being moved om 3F because F-tank was being emptied and everyon ise would be moved later.

About an hour later deputy Rojo-Perez arrived at the aintiffs bunk area to direct him to pack his things nd move.

2. The plaintiff refused to move from his current ousing placement and told Rojo-Perez that he was not noving for mental health reasons and needed to speak ith a mental health specialist right away.

3 Deputy Rojo-Perez continued to try and plead with he plaintiff to move until he gave up and returne o his post in the control bubble to phone mental nealth.

14. While deputy Rojo-Perez was away back at his post his partner on shift deputy Verdugo approached the plaintiffs bunk area to ask the plaintiff why he was

5. The plaintiff asked deputy Verdugo why he was being moved for no reason.

6. Deputy Verdugo kneeled down to the plaintiff to whisper to him at his bunk (which can be seen on camera) then after checking to make sure his belt recorder was off deputy Verdugo proceeded to explain to the plaintiff that the Sergeant on shift Defendant John D complained about all the grievances coming in about the old air and blamed them on the plaintiff because the plaintiff was the only inmate who appealed their grievance so the sergeant ordered for the plaintiff to be moved

7. The plaintiff asked deputy Verdugo which sergeant it was on shift who wanted the Plaintiff moved.

8. Deputy Verdugo replied and said "C'mon bro you know I can't tell you all that, but you really screwed yourself with the grievances".

9. Shortly after deputy Verdugo was done talking to the plaintiff deputy Rojo-Perez approached the plaintiff's bunk area to notify him that mental health was on the way to see him.

0. After agreeing to walk outside the housing segment into the interview room to see mental health the plaintiff was escorted out by deputy Rojo-Perez.

1. Once inside the secured interview room located in the G wing of unit 3, the plaintiff waited to see mental health which whom did not arrive until almost 45 minutes later around 9AM on the next shift.

2. At around 9am the plaintiff spoke with mental health specialist Adrianna whom concluded after interviewing the plaintiff that moving the plaintiff to a different unit would disturb his mental health and relayed that information to the classification officers who oversee housing placement.

3. After speaking with classification , mental health specialist Adrianna informed the plaintiff that classification insisted that the plaintiff must move from the top tier of 3F to the bottom tier of 3F if the plaintiff couldn't be moved to unit 1.

30. While being escorted back into the housing segment the plaintiff asked deputy Perez-zavalla if it was alright to stay out with the top tier and move downstairs later so the plaintiff could get his dayroom time because the bottom tier already had their dayroom time.

31. Deputy Perez-zavalla agreed to allow the plaintiff his dayroom time and said the plaintiff was good to move his things downstairs later after dayroom.

32. During dayroom an inmate on the bottom tier signaled the plaintiff come speak with him at the cage.

33. The inmate on the bottom tier was Daniel Morrisette who called the plaintiff over to tell him that all the other inmates downstairs on the bottom tier had plans on attacking the plaintiff once he moved into the bottom tier after dayroom.

34. At around 1:45 pm shortly after the plaintiff was made aware of the plans for his attack, the plaintiff notified officer Perez-zavalla on his routine walk and told him that it was no longer safe to move to the bottom tier because he would be attacked.

35. Deputy Perez-Zavalla informed the plaintiff that he would contact the classification officer on shift officer Certa to notify her of the situation to find the plaintiff a different housing placement.

36. Deputy Perez-Zavalla also instructed the plaintiff to make a request to speak with classification officer Certa via the facilities electronic request kiosk which the plaintiff fulfilled promptly after speaking with Perez-Zavalla on his routine walk.

37. After calling over to classification officer Certa, deputy Perez-Zavalla notified the plaintiff that the only housing option that was available was in unit 1D.

38. The plaintiff agreed to the unit change and was told by officer Perez-Zavalla that he would be moving after dinner time chow.

39. After dinner time chow was served in 3F the plaintiff packed his property and was moved from unit 3F to unit 1D around 5:30

40. After being in unit 1D for several hours the plaintiff was call to the unit door by the night shift officer on duty deputy Bullard around 1am on the date of 9/21/2024 and was told to pack his things so he could move back to 3

11. The plaintiff followed deputy Bullards orders and prepared to move back to unit 3F.

2. Once the plaintiff was prepared to move deputy Bullard instructed the plaintiff to disregard his order and return to his bunk.

3. 15 Minutes later deputy Bullard re-instructed the plaintiff to pack his things and prepare to move again.

4. The plaintiff followed deputy Bullards instructions again and waited another 15-20 minutes to be escorted back to unit 3F.

5. Once it came time for the plaintiff to be moved back to 3F the night shift officer on duty for unit 3F deputy Verdugo arrived to unit 1D to escort the plaintiff back to 3F.

6. The plaintiff asked officer Verdugo if he was being moved back to his original placement on bunk 164 of the upper tier of 3F.

7. Officer Verdugo answered the plaintiff "No" then said he knew that deputy Perez-Zavalla on 1st shift helped the plaintiff avoid being moved into 3F lower tier and assaulted there.

8. Officer verdugo went on to further explain to the plaintiff that he didn't understand why classification called in the middle of the night to move the plaintiff back into a known safety risk.

9. officer verdugo continued to explain to the plaintiff that he tried to explain the problem and dissuade classification from trying to send the plaintiff to 3F Lower Tier.

## CLAIM III

0. While talking with deputy verdugo outside of unit 1D the plaintiff seen the sergeant Defendant A. Medawar conducting a routine walk.

1. The plaintiff explained to Defendant Medawar how he had seen moved from his original placement on the upper tier of 3F for no reason as passive retaliation, for filing grievance complaints about the excessively cold air.

2. The plaintiff went on to explain how he wasn't supposed be moved inside the lower tier of 3F because his safety would be at risk which 1st shift officer Perez-zavalla was made aware of whom called classification to make note of the threat and find the plaintiff other housing.

53. The plaintiff asked Defendant A. Medawar if he could be moved back to his original housing placement on the upper tier of 3F instead of the Lower tier where he would be at risk.

54. Defendant Medawar told the plaintiff that he was in Jail and didn't have a choice but to move where he was told before walking away to continue her routine walk.

55. After speaking with Defendant Medawar the plaintiff was escorted to 3F Lower tier where the plaintiff was shortly soon ambushed and attacked by numerous other inmates less than an hour after arriving inside the Lower tier,

56. The attack was then broken up by Officer Verdugo and his partners on shift who entered the unit to extract the plaintiff and inmate Daniel Morrissette who was also attacked for notifying the plaintiff ahead of time that he would be attacked.

57. While being escorted out of the Lower tier of unit 3F the plaintiff seen defendant Medawar in the hall with a big smile shaking her head at the plaintiff as if the plaintiff being attacked satisfied her.

8. After being extracted from inside the **Lower** Tier of 3F he plaintiff was seen by medical.

9. The plaintiff informed the nurse he was experiencing severe ead pain and may need to be examined at a hospital.

0. The nurse gave the plaintiff asprin and offered no further xamination or treatment.

1. After being seen by medical the plaintiff was asked by fficer Verdugo if he would like to have pictures taken of his njuries and make a recorded statement.

2. Officer Verdugo cautioned the plaintiff that if he had ictures of his injuries taken and made a statement that he plaintiff would be placed in protective custody.

03. The plaintiff declined to have pictures of his injuries taken or give a recorded statement to avoid being labeled a snitch and thrown into protective custody, which would have only further endangered the plaintiff.

24. After the plaintiff refused officers Verdugo's offer to take pictures of his injuries and record his statement the plaintiff was taken to intake processi to wait inside a holding cell until he was assigned new housing placement.

25. Hours later the plaintiff was assigned back to his original housing placement back to bunk 64 on the uppe tier of 3F where the plaintiff was housed before bei moved as retaliation for filing grievance complaints ab the cold air.

26. The plaintiff was escorted back to the upper tier of 3F and placed inside the tier segment shortly before breakfast time around 4:30-5AM on 9/21/2024.

27. After the plaintiff returned to his original housing placement the plaintiff began to speak with inmate Elisha Jones.

28. Elisha Jones is an inmate who slept on the bunk next to the plaintiff on the upper tier of 3F before the plaintiff was moved.

69. Elisha asked the plaintiff questions about what happened to him inside the lower tier and what all the noise was about.

70. The Plaintiff explained the details of everything that took place after he was moved.

71. Inmate Elisha Jones went on to explain how he seen defendant Medawar enter the unit segment laughing in the dayroom of 3F amongst her subordinates about the situation as she ordered them to conduct a shake down after the attack incident.

72. Hours later after that conversation the plaintiff awoke from his sleep and noticed fluid discharge colored with dark blood and earwax streaming from his left ear that was accompanied by a severe loss of hearing.

73. The plaintiff went to fill out a request to see medical and was seen on the day of 09/23/2024

4. On that day of 09/23/2024 the nurse medical examiner concluded that the plaintiff Pierre Simms had sustained injuries to his left eardrum and inner ear canal.

5. The plaintiff was reffered to the docter and was seen by the facility docter the following day of 09/24/2024.

6. On 09/24/2024 the plaintiff was seen by the facility docter who also concluded that the plaintiff Pierre Simms may have suffered potentially permanent hearing loss, and scheduled the plaintiff for a hearing test.

7. Since then the plaintiff has still yet to been seen for a hearing test or any further follow up examines as of the date of this writing (12/29/2024) and has still not recovered hearing in his left ear.

8. The allegations and events in this claim can all be verified by facility video footage, officers department issued belt recorders, facility electronice inmate kiosk records, and witness testimony.

'9. Defendant John Doe was deliberately indifferent to the unnessacary harsh conditions of the excessive cold temperatures in the facility and the lack of ccess to suitable clothing to inmates which deprived he plaintiff of the basic life neccesatiy of larmth, causing unnecessary pain and suffering hat amounted to cruel and unusual punishment in violation f the Constitutional Eight Amendment.

0. Defendant John Doe retaliated against the plaintiff y moving the plaintiff to a different housing segment or filing grievance complaints about the excessive coldness and helping other inmates file grievances, he defendants retaliation to the plaintiffs grievances, s in violation of the Constitutional First Amendment right o freedom of speech.

31. Defendant Medawar's deliberate indifference to known safety risk to the plaintiff that defendant Medawar was aware of led to the needless permanent injuries inflicted upon the plaintiff by a expected and preventable attack, the defendants deliberate indifference to a documented safety risk to the plaintiff caused unnecessary injury, torment and suffering in violation of the constitutional Eight Amendment.

## E. REQUEST FOR RELIEF

I believe that I am entitled to the following specific relief:

1. A declaration that the acts and omissions described herein violated plaintiffs rights under the constitution and laws of the United States.

2. A preliminary and permanent injunction commanding the defendants to stop using excessive cold air as punishment and to allow the plaintiff access to suitable clothing by providing the opportunity to purchase thermal shirts and thermal underwear from commissary in accord with all other neighboring county jails.

3. Compensatory damages in the amount of no less than $777,000.00 against each defendant jointly and seperately for the unnecessary permanent injury and pain and suffering to the plaintiff.

4. Punitive damages in the amount of $7,000 against each defendant.

5. Any other relief this court may deem just and proper

6. Trial by jury is hereby demanded on all claims alleged herein, and the parties are hereby given notice pursuant to Fed. R. Civ. P. 38(a)-(c).

1-6-2025
_____
(Date)

_Pierre Sims_
_____
(Signature of Plaintiff)

## San Bernardino County Sheriff's Department
## Grievance

*Initial Grievance Date* →

**Grievance ID:** G372409-0027262    **Booking #:** 2305341310    **Date:** 09/16/2024 13:29

**Name:** SIMMS, PIERRE STEPHEN    **Location:** 37 / 3F

**Category:** CUSTODY / Inmate Issue/Other    **Incident Date:** 09/16/2024 13:21

**Location:** UNIT 3 F

**Grievance:** FOR ABOUT THE PAST 2 WEEKS THE TEMPERATURE INSIDE THIS FACILITY HAS BEEN UNUSUALLY COLD, I HAVE ASKED EVERY DUPUTY AND SGT ON SHIFT TO DO SOMETHING ABOUT THIS FREEZING COLD AIR OVER THIS TIME PERIOD, ALONG WITH OTHER INMATES WHO HAVE DONE THE SAME. THE FACT THAT THE CLOTHING ITEMS ISSUED TO US ARE NOT APPROPRIATE TO THIS CLIMATE SHOULD DEEM ANY FURTHER NEGLIGENCE OF THIS MATTER TO BE CONSIDERED CRUEL AND UNUSUAL PUNISHMENT, WHICH IS A VIOLATION OF OUR 8TH AMENDMENT RIGHT.

---

**Investigated Date:** 09/18/2024    **Completed Date:** 09/18/2024 21:24

**Duplicate:** NO    **Duplicate ID:**

*Defendant Doe's run around reply* →

**Disposition:** EXONERATED

**Findings:** THE TEMPERATURE IS SET TO ACCOMMODATE NUMEROUS PEOPLE LIVING IN A CONFINED SPACE. EACH INDIVIDUAL HAS A DIFFERENT TOLERANCE FOR VARYING TEMPERATURES AND NOT ALL TOLERANCES CAN BE ACCOMMODATED. THE UNIT STAFF ENTERED A REQUEST WITH MAINTENANCE TO CHECK THE TEMPERATURE IN THE SEGMENT.

*Confirmation of the frigid Temperature*

**Actions:** ADMIN REVIEW.    *Grievance Appeal that upset Defendant Doe.*

**Accepted:** NO    **Date:** 09/19/2024 09:43    **Allow Appeal:** Y

**Reason:** IT CAN BE SEEN CLEARLY ON FOOTAGE FROM ANY CAMERA ANGLE ON ANY GIVEN DAY IN THIS FACILITY THAT THE MAJORITY OF THE STAFF ON DUTY WEAR HEAVY BOMBER JACKETS THROUGH THEIR SHIFT TO COMBAT THE FRIGID TEMPERATURES. NOW PLEASE TELL ME HOW IT IS NOT AN INFRINGEMENT UPON OUR HUMAN RIGHTS TO BE SUBJECTED TO THIS TYPE OF CLIMATE WITHOUT CLOTHING THAT IT IS APPROPRIATE FOR SUCH TEMPERATURES THAT ARE SO COLD EVEN THE STAFF NEED BOMBER JACKETS INDOORS DURING THE SUMMER TO MIMIMIMZE IT"S HARSH EFFECTS.

**Investigated Date:**    09/24/2024                          **Completed Date:**    09/24/2024 16:09

**Duplicate:**   NO                                          **Duplicate ID:**

**Disposition:** EXONERATED

**Findings:**   I CONFIRMED WITH MAINTENANCE TODAY 09/24/2024,  UNIT 3'S RETURN AIR VENTS ARE SET TO 73 DEGREES. THIS IS IN THE RANGE RECOMMENDED TEMPERATURES.

**Actions:**    ADMIN REVIEW.

**Accepted:**   NO                  **Date:**    09/25/2024 07:39         **Allow Appeal:**   Y

**Reason:**    CONFIRMING THAT THE TEMPERATURE HAS BEEN SET TO 73 DEGREES STILL DOESN"T NEGATE THE FACT THE WE ARE STILL BEING HOUSED IN CLIMATES THAT MAKE YOUR EMPLOYEES WEAR JACKETS TO KEEP WARM WHILE US INMATES ARE NOT ISSUED APPROIATE CLOTHING ITEMS OR GIVEN THE OPPORTUNITY TO PURCHASE THEM FROM COMMISARY. THESE ARE UNNECESSARY HARSH CONDITIONS THAT ARE BEING DELIBERATELY IGNORED.

---

**Investigated Date:**    09/26/2024                          **Completed Date:**    09/26/2024 13:00

**Duplicate:**   NO                                          **Duplicate ID:**

**Disposition:** EXONERATED

**Findings:**   INMATE PIERRE SIMMS' ALLEGATION WAS INITIALLY ANSWERED WITH PROPER INFORMATION BUT A TEMPERATURE CHECK OF THE SEGMENT WAS NOT COMPLETED. AFTER SIMMS' FIRST APPEAL, THE SUPERVISOR PROVIDED SIMMS' WITH THE ACTUAL TEMPERATURE IN THE SEGMENT. THE 73 DEGREE TEMPERATURE IS IN THE RANGE OF RECOMMENDED TEMPERATURES. SIMMS' SUBSEQUENT APPEAL DID NOT OFFER ANY NEW INFORMATION TO WARRANT ANOTHER INVESTIGATION. THIS GRIEVANCE IS ADMINISTRATIVELY CLOSED AND NOT EXHAUSTED.

**Actions:**    ADMIN REVIEW

**Accepted:**   NO                  **Date:**                        **Allow Appeal:**   N

**Reason:**



